## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JAMES FREDERICK YOUNG, III,
*Prisoner Identification No. 3758409,*

      Plaintiff,

      v.

WARDEN FRANK BISHOP,

      Defendant.

Civil Action No. TDC-16-0242

### MEMORANDUM OPINION

James Frederick Young, III, currently confined at North Branch Correctional Institution ("NBCI") in Cumberland, Maryland, has filed this Complaint pursuant to 42 U.S.C. § 1983. Young alleges that his rights under the Eighth Amendment to the United States Constitution and Articles 4, 5, 7, and 11 of "Human Rights" were violated while he was housed as a pretrial detainee at NBCI. Compl. ¶¶ 13-21, ECF No. 1. Presently pending before the Court is a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment filed by Defendant Warden Frank Bishop ("the Warden"). For the reasons set forth below, the Motion is granted.

### BACKGROUND

On October 7, 2015, Young was charged with first-degree assault, second-degree assault of a law enforcement officer, two counts of second-degree assault, resisting arrest, disorderly conduct, and failure to obey a reasonable and lawful order. As a pretrial detainee, he was initially held at Baltimore Central Booking and Intake Center ("BCBIC"). While Young was detained there, on October 7, 2015, he refused to comply with direct orders to stay locked in his cell. When a lieutenant, sergeant, and three correctional officers physically escorted him into his

cell, he became combative by swinging his fist. The sergeant and correctional officers placed Young on the ground to handcuff him with his arms behind his back. On October 8, 2015, Young was served with a notice of inmate infraction, charging him with violating prison Rules 100 (engaging in a disruptive act), 101 (committing assault or battery on staff), 104 (using intimidating, coercive, or threatening language), 312 (interfering with or resisting the performance of staff duties), and 400 (disobeying an order). As a result of this incident, Young was ordered into administrative segregation pending a hearing. On the morning of October 12, 2015, Young assaulted a sergeant and officer at BCBIC after failing to comply with orders to return to his cell.

On October 12, 2015, Young was transferred to NBCI and placed in administrative segregation and on staff alert based on concerns that he posed a danger to the "security of the institution and/or inmates and/or staff." Mot. Dismiss Ex. 1 at 4, 5-6, 52, ECF No. 12-2. On November 19, 2015, a formal hearing was held regarding the charges stemming from the October 7, 2015 incident. Young pleaded guilty to violating prison Rules 101, 312, and 400. The hearing officer imposed a sanction of 90 days of segregation and an indefinite suspension of visitation privileges. Young did not formally appeal the decision or the sentence. On December 15, 2015, William Bohrer, on behalf of Warden Bishop, reviewed and affirmed the hearing officer's decision but reduced the visitation suspension from an indefinite period to six months and imposed 60 days of cell restriction. At NBCI, inmates placed in segregation for disciplinary reasons receive out-of-cell recreation five days a week, as well as two showers per week. An inmate on segregation with cell restrictions receives recreation only once per week. Young at times declined the out-of-cell recreation time and showers available to him.

On March 25, 2016, Young was convicted by a jury in the Circuit Court for Baltimore City, Maryland of second-degree assault and second-degree assault of a law enforcement officer. He was sentenced on the same date to four years of imprisonment.

In his Complaint, received by the Court on January 7, 2016, Young claims that his pretrial detention at NBCI constituted cruel and unusual punishment in violation of the Eighth Amendment because he received only one hour of out-of-cell recreation time each week due to his placement on cell restriction.  Young also alleges violations of the Eighth Amendment and his human rights because he was housed as a pretrial detainee in a maximum security facility with convicted inmates, and because, in his view, confinement at NBCI is akin to slavery in that he was subjected to inhumane torture in the form of prison officials allowing an inmate in an adjacent cell to "constantly throw feces" on his cell door and food slot.  Compl. ¶¶ 14-19.  He further contends that he is subjected to discrimination on a daily basis, in violation of his human rights, because most of the correctional officers are racist and "are out to hurt [him] mentally or physically because [he is] currently incarcerated for assaulting two Baltimore City Police Officers." *Id.* ¶¶ 20-22.  Young seeks declaratory and injunctive relief, "'make-up' recreation," compensatory and punitive damages, and costs. *Id.* ¶¶ 33-38.

The Warden has filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment.  Pursuant to *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), Young was sent correspondence notifying him that the Warden had filed a dispositive motion, the granting of which could result in the dismissal of his action.  Young was also informed that he was entitled to file materials in opposition to the Motion within 17 days from the date of that letter, and that his failure to file a timely responsive brief to illustrate, through accompanying affidavits or other evidence, a genuine dispute of material fact could result in the dismissal of his case or in

the entry of summary judgment without further notice of the Court.   Young did not file a Response.

## DISCUSSION

The Warden seeks dismissal of the Complaint or summary judgment in his favor on several grounds, including that:   (1) the Complaint must be dismissed because he is immune from liability under the Eleventh Amendment to the United States Constitution; (2) Young's Human Rights claims do not state a cognizable claim for relief; (3) the Complaint does not allege that the Warden personally participated in the alleged violations; (4) Young failed to exhaust his administrative remedies; and (5) Young has failed to state a plausible constitutional claim arising from his transfer to NBCI and the imposition of a cell restriction limiting his recreation time.

## I.      Legal Standards

### A.      Motion to Dismiss

The United States Court of Appeals for the Fourth Circuit has "been unclear on whether a dismissal on Eleventh Amendment immunity grounds is a dismissal for failure to state a claim under Rule 12(b)(6) or a dismissal for lack of subject matter jurisdiction under Rule 12(b)(1)." *Andrews v. Daw*, 201 F.3d 521, 524 n.2 (4th Cir. 2000).   The Fourth Circuit has noted that "[a]lthough not a true limit on the subject-matter jurisdiction of the federal courts, the Eleventh Amendment is 'a block on the exercise of that jurisdiction.'" *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 48 (4th Cir. 1996) (quoting *Biggs v. Meadow*, 66 F.3d 56, 60 (4th Cir. 1995)).   Thus, to the extent that the Warden's Eleventh Amendment immunity argument is most appropriately construed as the subject of a motion to dismiss for lack of subject matter jurisdiction, it would be governed by Federal Rule of Civil Procedure 12(b)(1).   Where, as here, the defendant's Eleventh Amendment argument relies on the pleadings alone, the standard is

effectively the same. Under Rule 12(b)(1), when a defendant asserts that the plaintiff has failed to allege facts sufficient to establish subject matter jurisdiction, the allegations in the complaint are assumed to be true under the same standard as in a Rule 12(b)(6) motion, and "the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

The Warden's arguments based on the lack of a cognizable claim for Human Rights violations and the failure to allege unconstitutional conduct by the Warden personally are properly construed as the subject of a motion to dismiss under Rule 12(b)(6). To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although courts should construe pleadings of self-represented litigants liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), legal conclusions or conclusory statements do not suffice, *Iqbal*, 556 U.S. at 678. The Court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cty.*, 407 F.3d 266, 268 (4th Cir. 2005).

**B.     Motion for Summary Judgment**

Because the Warden has submitted evidence for the Court's review, and because Young has not requested an opportunity for discovery, the remaining arguments are construed as asserted pursuant to a motion for summary judgment. *See* Fed. R. Civ. P. 12(d). Under Rule 56, the Court grants summary judgment if the moving party demonstrates there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.

5

R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing a summary judgment motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). The nonmoving party has the burden to show a genuine dispute on a material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248-49.

## II.     Eleventh Amendment Immunity

The Warden asserts Eleventh Amendment immunity from suits against him in his official capacity. Absent waiver by the state, the Eleventh Amendment bars suits in federal court against states and state officials in their official capacities, except suits seeking prospective injunctive relief from ongoing violations of federal law. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66, 70-71 & n.10 (1989); *Bland v. Roberts*, 730 F.3d 368, 389-91 (4th Cir. 2013). The Warden's employer, the Maryland Department of Public Safety and Correctional Services, is part of a state agency, and the State of Maryland has not waived its immunity from suits in federal court against state prison officials, including those working at NBCI. *Clark v. Md. Dept. of Pub. Safety & Corr. Servs.*, 247 F. Supp. 2d 773, 775-76 (D. Md. 2003). Therefore, all claims against the Warden in his official capacity are dismissed, with the exception of Young's request for an injunction.

III.    **Human Rights Claims**

Young alleges violations of Articles 4, 5, 7, and 11 of "Human Rights." In particular, he asserts that the "slavery type of atmosphere" at NBCI violates Article 4's prohibition on slavery and servitude; the Warden singling him out for "unhuman torture" and having an inmate throw feces on Young's cell door and food slot violates Article 5's prohibition on torture and "cruel, inhuman or degrading treatment or punishment"; his confinement in a facility with convicted offenders violates his right under Article 11 to be "presumed innocent until prove[n] guilty"; and his right to be free from discrimination under Article 7 is being violated by racism on the part of correctional officers. Compl. ¶¶ 14-22.

A claim under 42 U.S.C. § 1983 requires that: (1) the plaintiff suffered a deprivation of "a right secured by the Constitution and laws" of the United States, and (2) the act or omission causing the deprivation was committed by a person acting under color of law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Young does not identify the source of the "Human Rights" articles cited in his Complaint. Defense counsel postulates that Young's reference may be to the Universal Declaration of Human Rights ("UDHR"), G.A. Res. 217 (III) A (Dec. 10, 1948). The UDHR, however, is a statement of principles that "does not of its own force impose obligations as a matter of international law." *Sosa v. Alvarez-Machain,* 542 U.S. 692, 734-35 (2004). Moreover, the UDHR does not provide a private right of action in an American court. *Konar v. Illinois*, 327 F. App'x 638, 640 (7th Cir. 2009); *Nix v. NASA Fed. Credit Union*, --- F. Supp. 3d ---, 2016 WL 4077720, at *8 (D. Md. Aug. 1, 2016). Because Young's UDHR claims fail to invoke a federal law or constitutional provision, and there is no private right of action under the declaration, they are dismissed for failure to state a cognizable cause of action. *See Moore v. McLaughlin*, 569 F. App'x 656, 660 (11th Cir. 2014) (affirming the dismissal of the plaintiff's UDHR claim because

the "rights secured by the [UDHR] are not federal rights" upon which he could base a § 1983 action).

## IV.    Personal Liability

The Warden seeks dismissal of the claims against him in his individual capacity because the Complaint does not allege that he had any personal role in the activities underlying Young's claims. Rather, Young frames the Warden's liability as based on the allegation that he "is legally responsible for the operation of the North Branch Correctional Institution and for the welfare of all the inmates in that prison." Compl. ¶ 4.

A state official may not be held liable under 42 U.S.C. § 1983 unless it is "affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights." *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th. Cir. 1977); *see also Monell v. Dep't of Social Servs of New York*, 436 U.S. 658, 690-92 (1978). There is no vicarious liability (*respondeat superior*) in § 1983 cases against government officials for the acts of their subordinates. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Vinnedge*, 550 F.2d at 928. In order for a supervising official to be held liable under § 1983, a plaintiff must establish that: (1) the supervisor knew that the subordinate "was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury"; (2) the supervisor's "response showed deliberate indifference to or tacit authorization of the alleged offensive practices"; and (3) there was "an affirmative causal link" between the supervisor's "inaction and the constitutional injury." *King v. Rubenstein*, 825 F.3d 206, 224 (4th Cir. 2016) (quoting *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994)). "Establishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions, and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury."

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (quoting *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984)).

Here, Young does not allege that the Warden was personally involved in the determination to transfer him to NBCI as a pretrial detainee, or that the Warden had any personal knowledge of the alleged discrimination against him. Accordingly, those claims are dismissed. Because Young alleges that the Warden's review resulted in the 60-day cell restriction that resulted in his limited recreation, and that the Warden "went so far as to having a prisoner next door to me constantly throw feces on my door and 'food slot," Compl. ¶17, those claims are not dismissed on this basis.

## V.     Exhaustion of Administrative Remedies

Young's claims relating to prison conditions, including his claims that the Warden arranged to have an inmate throw feces into his cell and imposed sanctions resulting in inadequate recreation time, fail because Young has not exhausted his available administrative remedies. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e (2012), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* § 1997e(a). The PLRA applies to all complaints regarding prison conditions, including any claims about "prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA mandates "proper exhaustion," by which inmates must complete the administrative review process, including meeting procedural requirements and applicable deadlines, before filing a claim in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 93 (2006). Courts have no discretion to dispense with the

exhaustion requirement in lawsuits where the PLRA applies. *See id.* at 85.

To exhaust administrative remedies, inmates in Maryland correctional facilities are generally required to follow the Administrative Remedy Procedure, as detailed in Division of Correction Directive No. OPS.185.0002 (2015) ("DCD OPS.185.0002"), http://itcd.dpscs.state.md.us/PIA/ShowFile.aspx?fileID=654. *See Blake v. Ross*, 787 F.3d 693, 697 (4th Cir. 2015). The first step in this process is to file a request for administrative remedy, commonly referred to as an ARP. DCD OPS.185.0002(.05)(J)(7). If this request is denied, the prisoner must file, within 30 days, an appeal to the Commissioner of Correction. DCD OPS.185.0002(.05)(L)(3). If this appeal is denied, the prisoner has 30 days to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See* Md. Code Ann., Corr. Servs. §§ 10-206, 10-210 (2002); Md. Code Regs. 12.07.01.05 (2017); *see also* DCD OPS.185.0002(.05)(N).

Young asserts in his Complaint that he used the "prisoner grievance procedure" by "present[ing] the facts relating to this complaint" to NBCI on December 24, 2015, but that he never received a response. Compl. ¶ 29. The Warden, however, has presented documentary evidence that Young did not file an ARP relating to his claims that another inmate threw feces at his cell door and food slot. Even if he had, the Warden has presented unrefuted evidence, in the form of the Declaration of the Executive Director of the IGO, that Young never appealed any such ARP to the IGO. Because Young did not exhaust available administrative remedies regarding that claim, the Warden is entitled to summary judgment on it.

Young's allegation that the Warden violated his Eighth Amendment right to be free from cruel and unusual punishment by curtailing his recreation time, which resulted from the imposition of 60 days of cell restriction, is also subject the PLRA's exhaustion requirement. *See,*

*e.g., Johnson v. Fields*, 616 F. App'x 599, 600 (4th Cir. 2015) (considering under the PLRA whether an inmate exhausted claims arising from disciplinary sanctions).  Complaints about inmate disciplinary proceeding decisions are not subject to the ARP process, but they are to be pursued in accordance with provisions of the Code of Maryland Regulations 12.02.27 and eventually appealed to the IGO.  DCD OPS.185.0002(.05)(F).  An inmate "may only appeal a hearing officer's guilty decision or imposed sanction" and must do so in writing to the warden "within 15 calendar days of receipt of the hearing officer's decision."  Md. Code Regs. 12.02.27.33 (2017).  An inmate waives the right to an appeal if he does not file a written appeal within the 15-day period.  *Id.*  If the appeal is denied or no response is received, the inmate may file an appeal with the IGO within 30 days of the date that either the inmate received the response to the appeal or when the response to the appeal was due to him.  *Id.*  An inmate must exhaust all appeal procedures for grievances arising from a disciplinary proceeding before filing a grievance with the IGO.  Md. Code Regs. 12.07.01.02(C) (2017).

The Warden has provided prison records establishing that Young did not timely file an appeal following the entry of his guilty plea and the hearing officer's November 19, 2015 determination.  Mot. Dismiss Ex. 2 at 11 ("Appeal Received: No").  Moreover, the Warden has presented the undisputed Declaration of the Executive Director of the IGO to establish that after the Warden's office reviewed Young's disciplinary sanctions and adjusted them to include the cell restriction, Young did not file an appeal to the IGO.  Accordingly, Young's Eighth Amendment claim that he did not receive adequate recreation time as a result of his placement on cell restriction fails because Young did not exhaust the available administrative remedies.

VI.     **Conditions of Confinement**

Even if Young's claim that the sanction of cell restriction unconstitutionally deprived him of adequate recreation time had been properly exhausted, *see supra* part V, and even if Young had properly stated a claim against the Warden that Young's pretrial detention in a facility for convicted inmates violated the Constitution, *see supra* part IV, consideration of the undisputed record reveals that the Warden is entitled to summary judgment on those claims.

Because the 60 days of cell restriction—and the resulting reduction in recreation time—was imposed while Young was a pretrial detainee, this claim is governed by the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979).  Since Young is a self-represented plaintiff, the Court will liberally construe this claim to be asserted under the Fourteenth Amendment.   The Fourteenth Amendment proscribes incarcerating a pretrial detainee in conditions that "amount to punishment, or otherwise violate the Constitution." *Id.*  Conditions constitute punishment when there is an "an 'expressed intent' to punish" or "a lack of a reasonable relationship 'to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred.'" *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992) (quoting *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988)).  Conditions that "are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Bell*, 441 U.S. at 540; *see also Feeley v. Sampson*, 570 F.2d 364, 369 (1st Cir. 1978) ("[A]s the maintenance of institutional security directly serves the state's interest in ensuring the detainee's presence [at trial], jail order and security has been accepted as a consideration entitled to great weight when balancing the state's interest against the

liberty interest of detainees.").

Here, the Warden has provided uncontroverted evidence that Young was transferred to NBCI and placed in administrative segregation for security reasons arising from his assault on correctional officers at BCBIC. After Young pleaded guilty at the disciplinary hearing relating to that incident to violations of prison rules against committing assault or battery on correctional staff, interfering or resisting the performance of staff duties, and disobeying an order, he was subjected to a 60-day period of cell restriction. In turn, the result of the cell restriction was a limitation on recreation to one session per week. Where Young has provided no evidence to dispute this account, the Court finds that his transfer, administrative segregation, and the 60-day cell restriction were "reasonably related to the institution's interest in maintaining jail security" and thus did not violate the Fourteenth Amendment. *Bell*, 441 U.S. at 540. The resulting limitation on recreation time likewise did not violate the Constitution. *See Beverati v. Smith*, 120 F.3d 500, 504 (4th Cir. 1997) (rejecting claims that the imposition of a six-month period of segregation for violation of prison rules, which included fewer opportunities for inmates to leave their cells and no outside recreation at all, violated the Fourteenth and Eighth Amendments); *Reynolds v. Shearin*, No. DKC-13-2495, 2015 WL 570308, at *5 (D. Md. Feb. 10, 2015) (rejecting the claim that a cell restriction limiting recreation to one hour per week violated the Eighth Amendment bar on cruel and unusual punishment and granting summary judgment in favor of defendants).

Likewise, Young's claim that it is unconstitutional to house a pretrial detainee with convicted offenders is unavailing. Housing pretrial detainees in such facilities does not necessarily violate their Fourteenth Amendment rights. *See Bell*, 441 U.S. at 524, 537, 546 n.28 (noting that pretrial detainee plaintiffs were housed in a facility with convicted criminals, that

regardless of whether it is called "a jail, a prison, or a custodial center, the purpose of the facility is to detain," and that "[t]here is no basis for concluding that pretrial detainees pose any lesser security risk than convicted inmates"); *Alderson v. Concordia Parish Corr. Facility*, --- F.3d. ---, No. 15-30610, 2017 WL 541006, at *3 & n. 5 (5th Cir. Feb. 9, 2017) (stating that indiscriminate confinement of pretrial detainees together with convicted offenders would be unconstitutional unless it is "reasonably related to the institution's interest in maintaining jail security or physical facilities do not permit their separation" (quoting *Jones v. Diamond*, 636 F.2d 1364, 1374 (5th Cir. 1981)). Here, the decision to house Young at NBCI as a pretrial detainee was undisputedly based on his assault of correctional officers and was therefore consistent with an interest in maintaining jail security. Accordingly, the Court concludes that on this record, Young's claim of a constitutional violation arising from his confinement at NBCI, even if deemed to be a cognizable claim against the Warden, would fail.

## CONCLUSION

For the foregoing reasons, the Warden's Motion is GRANTED. A separate Order shall issue.


Date: February 28, 2017

THEODORE D. CHUANG
United States District Judge